HAWKINS, Presiding Justice,
for the Court:
Paul R. Daniels appeals his conviction of the sale of cocaine in the circuit court of Marion County. Because the evidence in this case leaves a serious question as to whether Daniels was entrapped as a matter of law, and through no fault of his the answer is not in this record, we reverse.
FACTS
James Kennedy Cotton, an undercover agent for the Mississippi Bureau of Narcotics, met with Agent Marie Edwards on November 6, 1987, and a confidential informant in Columbia, Mississippi, for a “pre-buy meeting”. Cotton and the informant went to the “Super Clean Car Wash” in Columbia where Daniels worked. Cotton had a “Code 10” transmitter and recorder concealed on his person. He told Daniels he was looking for some marijuana or cocaine. After waiting several minutes for Daniels to take his lunch break, Cotton left the informant in his car, while he and Daniels went about a mile from the car wash to a house at 505 Nathan Street. The two were followed by Agent Edwards and Columbia police officer Richard Stringer, who monitored by radio Cotton’s conversation with Daniels. Cotton, at Daniels’ request, waited outside while Daniels took $50.00 given him by Cotton inside to purchase the cocaine. Cotton did not see anyone in the house.
When Daniels returned with the cocaine, Daniels requested that he be given a portion of the cocaine for his services; Cotton refused, but instead gave him an additional *1175 $5.00 “to satisfy him”. Upon their return to the car wash, Cotton left with the confidential informant in his car.
On November 20, 1987, there was a repeat performance by the same parties, except they went in Cotton’s ear, and this time Cotton paying Daniels $60.00, and Daniels requesting some cocaine for his services. Cotton instead gave him $2.00.
On February 26, 1988, the grand jury of Marion County indicted Daniels on two counts of the “sale of cocaine, a controlled substance,” and setting forth the applicable statutes.
On cross-examination at trial, Cotton admitted that Etta Mae Brown, who lived at 505 Nathan Street where these transactions occurred, had a reputation for selling drugs. Cotton did not know from whom Daniels purchased the drugs, nor did he know where Daniels lived.
Marie Edwards, of the Mississippi Bureau of Narcotics, testified that she was the surveillance officer on the dates cocaine was purchased from Daniels. She explained that a surveillance officer maintains either visual or audio surveillance of the undercover officer making a purchase. She corroborated Cotton.
Laboratory reports confirmed the substance was cocaine.
Daniels’ motion for a directed verdict on both counts was denied. Daniels was supporting three children with another child due in April 1989. He testified that he was born in Milwaukee, Wisconsin, and had lived in Marion County for the past five years. After stating that he had never sold any “dope” before, Daniels next stated that he would not have done “it” had the confidential informant not requested that he do “it” and offered him money. He again denied having “ever dealt in drugs” or “ever been arrested for dealing in drugs.” He stated that he was not predisposed to sell cocaine until he was approached by the confidential informant (“Junior”) and Cotton.
Daniels testified to his reason for having purchased the cocaine as follows:
He [the confidential informant] told me that he owed Etta Mae [Brown] some money and that he couldn’t go buy the stuff, but he would give me $5 if I’d go get it for him, for him and his cousin.
[[Image here]]
And so I told him that I can’t get off from work right now cause I’m working, but wait till my lunch time, and I might do it for him. So they hung around and stuff. We talked. We all talked and stuff. Then it was time to do it. He said that — he told me that the nares was his cousin. He said, “He’s the one that’s got the money, so I’m going to wait here.” Me and him rode over there, and I got in his car.
(T.202-203)
Daniels stated that Cotton drove him to 505 Nathan Street “by Etta Mae’s house.” Upon arrival at Etta Mae’s, Daniels was given $50.00 and he purchased the cocaine for $25.00, yet stated that he did give Cotton back “I think it was $30.” and Cotton gave him five dollars.
Daniels admitted that he purchased cocaine for Cotton, again on November 20, 1987. He stated that on the second occasion Etta Mae referred him to her niece’s house, just down and across the street. He called the niece from Etta Mae’s house, but could not recall her name at trial. Daniels purchased the cocaine from the niece and Cotton gave him five dollars for his services.
Daniels testified that he had been not been able to locate Etta Mae or her niece, either through his attorneys or the State. He added that Etta Mae and her niece had left town to an unknown destination.
Daniels said that he did not sell the cocaine to Cotton, nor had he ever sold any dope in his life.
Daniels was cross-examined extensively concerning his attempts to obtain the attendance of Etta Mae and her niece at trial.
Daniels called the circuit clerk, Joe Herring, to confirm that defense subpoenas had been issued for the trial appearance of Etta Mae Brown. Three alias subpoenas had been issued for Etta Mae, but all were *1176 returned after not having been served. On one there was written, “Been by five times. Pad lock on door, 8/16/88, S07.” The State stipulated that it had caused no subpoenas to be issued for Etta Mae Brown. Daniels rested his case after calling Herring.
LAW
Daniels has three assignments of error, but we need address only one. He claims he was entitled to a directed verdict of acquittal, having shown he was entrapped, and, if not an acquittal, at least a new trial. We agree that he is entitled to a new trial under the quite unusual facts of this case.
The record is uncontradicted that Daniels held a menial job, and until the dates of these offenses had never been charged with any drug related offense. The confidential informant “Junior” told him that he, Junior, owed Brown some money, and he could not go with his “cousin” to get some cocaine, but he would give Daniels $5.00 if he would go get it “for him and his cousin.” Daniels took “cousin” Cotton in his car to Brown’s house, took Cotton’s money, went inside and purchased cocaine for Cotton. He returned and wanted a tip of some of the cocaine for his services. Two weeks later the transaction was essentially repeated, only this time they rode in Cotton’s car, and Daniels purchased the cocaine from a house across the street from Brown’s.
If Brown and her niece, whoever she was, were also assisting the State, we would have a more egregious case of entrapment than Tanner v. State, 566 So.2d 1246 (Miss.1990), and Gamble v. State, 543 So.2d 184 (Miss.1989), where we held the defendants were entitled to a directed verdict of acquittal. In those cases narcotics officers supplied the accused with the drugs and other narcotics agents purchased them from the accused. In this case Daniels was not even the original seller, but a go-between, a conduit.
We can be sure that the disappearing Brown and her niece were one of the following:
(1) Agents of the narcotics officers;
(2) In collusion with Daniels in the sale of cocaine (“joint” venturers?); or
(3) Acting on their own.
We can readily dismiss (2) because Daniels made a diligent continued effort to secure the attendance of Brown as a defense witness to help him prove entrapment, a choice he would never have made if they were joint venturers in this enterprise. Significantly, the State made no effort whatever to locate Brown, who like the Arab folded her tent and departed without a trail.
We are left with the alternative of (3) Brown and the niece were acting on their own, or (1) she was indeed assisting the narcotics officers. If (3), then a jury issue is made of whether or not Daniels was entrapped. He would not in such event be entitled to an acquittal as a matter of law that he was entrapped. But if (1), then he is entitled to an acquittal as a matter of law. Tanner v. State, supra; Gamble v. State, supra.
Only the State can answer this question. It should be required to do so under the facts of this case. In the unusual posture of this case, such a requirement is analogous to requiring under certain circumstances that the State produce all law enforcement officer witnesses to a confession. Peden v. State, 425 So.2d 1356, 1358 (Miss.1983); Scott v. State, 382 So.2d 1091 (Miss.1980); Agee v. State, 185 So.2d 671 (Miss.1966).
If Brown indeed had no connection with the Bureau of Narcotics, it will be a simple matter for the appropriate representative of that agency to so testify before the jury.
This case is troubling. No effort was made to search Brown’s or her niece’s house; no arrest has been made. If she is indeed a dealer in drugs, she poses a far greater threat to society in its war on drugs than Daniels. Roustabouts can be found in any town who, like Daniels — for a tip and believing it is safe — will escort a customer to someone he believes is a drug dealer. If such persons are the only ene *1177 mies the narcotics officers attack, our war on drugs will be weak indeed.
A trial is nothing if not fair and even, and no relevant evidence should be kept from the jury. It is relevant in this ease for a jury to hear first hand evidence of whether Brown was or was not acting on behalf of the narcotics agents.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ„ concur.