594 So.2d 1143 (1991)
Ansel BOSARGE, Jr., and Eddie Steve Ellis
v.
STATE of Mississippi.
No. 89-KA-0247.
Supreme Court of Mississippi.
December 31, 1991.
Rehearing Denied April 1, 1992.
George S. Shaddock, Pascagoula, for appellant.
Mike C. Moore, Atty. Gen., Wayne Snuggs, Asst. Atty., Patricia W. Sproat, Sp. Asst. Atty. Gen. Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice, for the Court:

I.
Today two Jackson County residents appeal their controlled substance convictions arising from their substantial marijuana distribution operations. They present familiar and perennially troublesome questions regarding the accuseds' access to the prosecution's paid confidential informant and the defense of entrapment. We have reviewed the points with care and find no error requiring reversal.

*1144 II.

A.
Ansel Bosarge, Jr., born September 20, 1952, and Eddie Steve Ellis, born January 20, 1955, are not new to the drug business. Their present problems appear to have begun at some time in 1987, when the then incarcerated Bosarge made the jailhouse acquaintance of Duane Melvin Marks. It seems that Marks had been convicted of felony shoplifting in February of 1987 and was housed with Bosarge in the Pascagoula Restitution Center.
A year later, in February of 1988, Marks approached officers of the Mississippi Bureau of Narcotics (MBN) and suggested that he might be of assistance in undercover drug operations. Marks said he knew people who would be willing to sell him marijuana. MBN, acting through Agent Roy J. Sandefer, struck a deal with Marks whereunder Marks would act as a paid confidential informant for the Bureau.
At some point shortly thereafter, Marks rented a house  a "little gray, shotgun house"  in the Bayou Cumbest area in Jackson County, a somewhat secluded site with "woods or brush ... on either side." This house was a little over a mile from property occupied by Eddie Steve Ellis. Marks had introduced Agent Sandefer to Bosarge, representing that Sandefer was his cousin from Kentucky. Marks began supplying information to Sandefer, who made marijuana buys from Bosarge on February 26 and March 4, 1988. Based on these two buys, MBN agents having carefully watched Bosarge's movements on each occasion, plus information Marks had supplied, MBN officials obtained a search warrant for the Ellis property.
Sandefer then began telephone negotiations with Bosarge for a much larger purchase  this time twenty-five pounds of marijuana. The deal was set for March 16, 1988, at Marks' house in a rural area off Orange Grove Road. At daybreak, MBN agents and other law enforcement officers had staked out the Marks house and the Ellis property as well, and had noticed Bosarge on the Ellis property. Later that morning, Bosarge met with Marks and Sandefer, who was still undercover, in Marks' house. MBN Agent Sammy Evans was nearby in the woods, monitoring via radio and recording what transpired and generally serving in a surveillance capacity. Sandefer showed Bosarge $21,050.00, with which he planned to purchase the twenty-five pounds of marijuana. Sandefer said that he wanted to inspect a sample of the marijuana but that he did not want to leave the Marks house with such a large amount of money. He asked Bosarge to leave and get him a sample. By this point, Marks had stepped outside of the house. Bosarge agreed, and Sandefer gave Bosarge $400.00  an earnest money deposit, if you will. Bosarge then got in his truck and left, apparently on his way to Ellis' property. While Bosarge was gone, Marks came back inside the house, and Sandefer told him, "Yeah, everything is slick." Before Bosarge returned, however, Marks left the property.
A few minutes later, Bosarge returned, carrying the marijuana sample in one hand and a walkie-talkie in the other. Sandefer took the marijuana, inspected it, approved it, and put it in his car. Sandefer and Bosarge then went to Ellis' truck and got in, whereupon Sandefer, with the assistance of other law enforcement officers who suddenly appeared, placed Bosarge under arrest and took his walkie-talkie. The group then transported Bosarge in a sheriff's car to the Ellis property and recovered the $400.00 Sandefer had given Bosarge a short while earlier.
The Ellis property was well equipped as a base for illegal drug operations. It lay in a secluded, marshy area in southeast Jackson County. It was protected by a security system of infra-red sensors that set off buzzers when automobiles approached. There was a thirty to forty-foot lookout watch tower. The house contained a trap door, facilitating escape. There was a base unit CB in the trailer. Officers subsequently discovered that the CB in a truck on Ellis' property, Bosarge's hand-held walkie-talkie, and the base unit in the trailer were all on the same channel. Armed with a search warrant, the officers entered *1145 the property and found a bag of marijuana containing 451.6 grams of marijuana, a bag with 10,848.1 grams of marijuana (23.91 pounds), a canister with 61.4 grams of marijuana seeds, a bag with 2.98 pounds of marijuana, and a package of 3.6 pounds of marijuana. The police eventually apprehended Ellis, who had disappeared into the woods. Ellis was armed with an AR-15, ammunition, tear gas, a gas mask, and was dressed in full camouflage.

B.
On April 20, 1988, a Jackson County grand jury returned a two-count indictment jointly charging Bosarge and Ellis, first, with delivery of a controlled substance, to-wit, marijuana, to Agent Sandefer and, second, with possession of a controlled substance with intent to distribute.[1] The grand jury charged Bosarge and Ellis, first, as repeat offenders within the Controlled Substances Act, see Miss. Code Ann. § 41-29-147 (1988), and, second, as habitual offenders. Miss. Code Ann. § 99-19-81 (Supp. 1988).
The case was originally set for trial in July of 1988. On July 6, 1988, the defense moved for an order requiring that the name and address of the confidential informant be disclosed. At the same time, the defense moved for a continuance. It appears that shortly after Bosarge and Ellis were taken into custody, the Circuit Court placed Marks on unsupervised probation and that he left town. In any event, on July 11, 1988, the Circuit Court granted Bosarge and Ellis a continuance because of Marks' absence.
The Circuit Court reset the case for trial some six months later, and on the eve of this new trial, on January 17, 1989, to be exact, Bosarge and Ellis moved for an order that the prosecution produce Confidential Informant Marks on grounds he was a material witness and, failing that, to disclose his whereabouts. The Court denied the motion but, during trial, the Defendants renewed it. The Court denied the motion again but directed the prosecution to lend its assistance to the defense in locating Marks. The defense moved again for a continuance, and that motion was denied. At the close of their case, the Defendants renewed their motion for a continuance, and it was denied once more.
In due course, the jury found Bosarge guilty as charged on both counts, to-wit: delivery of a controlled substance and possession of a controlled substance with intent to distribute, and the Circuit Court sentenced him as a repeat and habitual offender to sixty years imprisonment on each conviction, the sentences to be served consecutively. The jury found Ellis guilty of possession of a controlled substance with intent to distribute, and the Court found Ellis guilty, as well, as a repeat and habitual offender and sentenced him to sixty years imprisonment.
Bosarge and Ellis now appeal their conviction(s) and sentence(s).

III.

A.
Bosarge and Ellis each argue that the Circuit Court erred when it denied their respective post-trial motions for a judgment of acquittal notwithstanding the verdict. The motions, of course, challenged the legal sufficiency of the evidence to sustain the convictions. Put otherwise, Bosarge and Ellis, in their motions  and on this appeal  say that, taking the prosecution's uncontradicted evidence as true, they are in law entitled to acquittal. The sole ground Bosarge and Ellis present in support of the present point is that they were entrapped.
We note in this setting that neither Bosarge nor Ellis questions the legal sufficiency of the evidence to establish that each, in fact, possessed a controlled substance with intent to distribute. Nor does Bosarge question that, in fact, he delivered a controlled substance to Agent Sandefer. We have traditionally taken the view that the defense of entrapment admits the underlying substantive offense, though of late we have relaxed the formalities of the *1146 admission. Tanner v. State, 566 So.2d 1246, 1248 (Miss. 1990); Phillips v. State, 493 So.2d 350, 352 (Miss. 1986); Turner v. State, 415 So.2d 689, 692-93 (Miss. 1982). The point for the moment is that the manner in which Bosarge and Ellis present on this appeal their challenge to the legal sufficiency of the evidence against them does not require that we inquire into the factual support for the substantive charges of which they have been found guilty. Rather, they place all of their eggs in the entrapment basket, to which we now turn.

IV.

B.
Bosarge and Ellis say they were entrapped. They base this defense on Bosarge's testimony that:
Duane Marks, the day before, on the fifteenth, he gave me fifty pounds to stash at the end of the road in a hole. Duane Marks did.
Thereafter, Agent Sandefer induced Bosarge to sell (a part of) what Marks had supplied, or so we are told. On cross-examination, Bosarge repeated his story  that all of the marijuana involved in this case  that which he is charged with possession of and that which he was charged with delivering  had been supplied by Marks. Bosarge and Ellis invoke our supply-and-buy cases dating back to Sylar v. State, 340 So.2d 10 (Miss. 1976), and Torrence v. State, 380 So.2d 248 (Miss. 1980), and argue that they are entitled to discharge.
In a long line of cases[2] beginning with Sylar and Torrence and continuing through Epps v. State, 417 So.2d 543 (Miss. 1982), and most recently including Gamble v. State, 543 So.2d 184 (Miss. 1989); Tanner v. State, 566 So.2d 1246 (Miss. 1990); and Pulliam v. State, 592 So.2d 24 (Miss. 1991), we have ordered defendants discharged when persons acting for the state both "supply the controlled substance to the accused" and then "buy it" from him. We have made clear that this is a form of official misconduct which must be condemned and that, absent a substantial and overriding showing of the defendant's predisposition for drug trafficking, our courts must acquit. See Tanner v. State, 566 So.2d at 1249; Moore v. State, 534 So.2d 557, 559-60 (Miss. 1988).
Consistent with accepted limitations on our scope of appellate review, we have recognized in supply-and-buy cases a discrete evidentiary circumstance where the defendant's testimony may be such that the trial court has no authority to submit the case to the jury. Epps, Gamble, Tanner and Pulliam were all cases where there was no substantial evidence of predisposition. In each case, the defendant testified that the state's paid confidential informant had supplied the marijuana an undercover state agent later importuned the defendant to sell to him. In each of these cases we made clear that, if the prosecution had called the confidential informant or other credible witness testifying on first-hand knowledge to rebut the defendant's claim, a jury issue would have been made and affirmance would have followed.
However, where the evidence stands uncontradicted, undisputed and unimpeached, even though the jury may not have believed the appellant, that testimony stands and makes out the defense. In cases such as this, prosecutors must have rebuttal evidence at hand to refute such testimony.
Gamble v. State, 543 So.2d at 185; see also, Epps v. State, 417 So.2d at 545. We understand this teaching in the context of our long-settled law that a jury has no right to disregard arbitrarily evidence that is uncontradicted and not unreasonable or improbable on its face. Pulliam v. State, supra.
Confidential Informant Marks did not appear at the trial below. Instead, the prosecution sought to rebut Bosarge's testimony by recalling Sandefer to the stand. Sandefer first said no one associated with MBN or the state supplied the marijuana to Ansel Bosarge. The Circuit Court correctly sustained the defense objection, and the prosecution rephrased the question, limiting *1147 it to what Sandefer knew of his own personal knowledge. Sandefer then testified that he did not know of anyone associated with the state, including Duane Marks, who furnished the marijuana to Bosarge. This testimony, of course, is worth little or nothing, as Sandefer admitted he and Marks never discussed who owned the marijuana. That Marks himself was never called presents another issue to which we will later turn.
Beyond this, the prosecution fares better for this record reeks of circumstantial evidence of predisposition on the part of both Bosarge and Ellis. There was substantial evidence that Ellis' property was being used as a base for a substantial drug operation. The area was wooded and secluded, somewhat surrounded by a marsh or swamp, with but a single shell-covered road route of ingress and egress. The property was protected by a substantial security system that people who are not up to no good as a matter of common sense do not have. For example, the Ellis property was protected by infra-red sensors that set off buzzers at the house, contained a watch tower and a trap door in the house so that one could escape through the floor. The fact that Bosarge, when arrested, carried a hand-held walkie-talkie tuned to the same channel  Channel 16  as the CB radio in a truck on Ellis' property and the CB radio in Ellis' trailer is highly suggestive. Moreover, Bosarge had testified that he hid the marijuana Marks is said to have given him "at the end of the road in a hole." Narcotics officers investigated this supposed hole and found no marijuana. To the contrary, MBN officers did find on Ellis' property a plyboard covered pit, with sticks, leaves and other camouflage sprinkled across it in which the better part of the twenty-five pounds of marijuana was found.
The heavily armed Ellis' flight and dress at the time he was apprehended suggest guilty knowledge. See, e.g., Evans v. State, 579 So.2d 1246, 1248 (Miss. 1991); Pannell v. State, 455 So.2d 785 (Miss. 1984). There was substantial additional evidence of predisposition on the part of both Bosarge and Ellis. Bosarge had two prior convictions. On July 16, 1976, Bosarge was adjudged guilty in the Circuit Court of Jackson County of distribution of a controlled substance. Five years later, the same Circuit Court adjudged Bosarge guilty of the felonious possession of 4,832 grams of marijuana with intent to deliver on March 3, 1981.[3] In the case of Ellis, the record reflects two January 13, 1976, convictions of distributing a controlled substance. The substantial security system around Ellis' property establishes as well his predisposition. See Sayre v. State, 533 So.2d 464, 466 (Miss. 1988).
The issues of entrapment and official misconduct were submitted to the jury on adequate instructions and resolved against Bosarge and Ellis. All things considered, we do not think the jury exceeded its prerogatives when it found Bosarge's story unreasonable and improbable on its face. That story is substantially disputed and impeached by the circumstantial evidence that abounds in this record. Fairminded jurors, having in mind the prosecution's beyond-a-reasonable-doubt burden of proof, could on this record easily have found Bosarge and Ellis substantially predisposed to commit the offenses charged. Entrapment and official misconduct were issues for the jury, and the jury resolved those issues against Bosarge and Ellis. Given our scope of review of such matters, we decline interference.

V.
Bosarge and Ellis urge that the Circuit Court abused its discretion when it denied their motion for a continuance to afford them "an opportunity to locate the confidential informer." We take it they refer to their motion two days before trial to require that the prosecution "produce material witness" and "disclose the present whereabouts of the confidential informer." On several occasions during the trial, the *1148 defense renewed their motion for a continuance "for the purpose of securing the presence of a material witness, Mr. Duane Marks." Once the defendants had rested their case, they renewed this motion once more. In their post-verdict motion for a new trial, Bosarge and Ellis once again charged that the court erred "in failing to sustain defendants' motion for a continuance."
Our legal parameters are reasonably well settled. The prosecution is not required invariably to produce the informant at the trial, on pain of discharge of the accused if they fail. Copeland v. State, 423 So.2d 1333, 1335-36 (Miss. 1982). Still, we recognize as a practical matter the prosecution will have far greater (means of) access to informants than will the persons they accuse. Where, as here, the informant is a material witness, the prosecution is required in discovery to disclose the informer's name and whereabouts. Rule 4.06(b)(2), Miss. Unif.Crim.R.Cir.Ct.Prac. (1979, as amended). Upon defense request, the prosecution must make diligent and timely effort to locate the informant and advise the defense of his whereabouts and how he might be contacted. Gowdy v. State, 592 So.2d 29 (Miss. 1991); Barrett v. State, 482 So.2d 239, 240 (Miss. 1986); see also, Roviaro v. United States, 353 U.S. 53, 60, 77 S.Ct. 623, 628, 1 L.Ed.2d 639, 645 (1957). The prosecution must make these efforts and produce this information sufficiently in advance of trial, so that the accused and their counsel may have meaningful opportunity to contact the informant and, if necessary, make arrangements for his presence at trial. Turner v. State, 501 So.2d 350, 352 (Miss. 1987). Moreover, the accused and their counsel are "entitled to a reasonable opportunity to employ their own resources to locate" the informer, Turner, 501 So.2d at 352, and frequently this will mean they may claim of right "one reasonable continuance." Gowdy v. State, supra.
Turning to today's facts, we find that the Defendants and their lawyer had known of Marks' name at least since July of 1988. They were granted a continuance of the July 12, 1988, trial setting for the precise reason that the material witness, Marks, was not available. Insofar as the record reflects, they did nothing from that moment until two days before trial, when they filed the motion at issue. The Circuit Court noted these facts and found:
And, as far as the Court can determine, there's been no effort by defense to locate the confidential informant, even though they had the name... .
The Court denied the motion as untimely, as much as anything else. Thereafter, the Court ordered the prosecution to assist the defense in locating Marks but refused to delay the trial.
This case is the other side of the coins we considered in Gowdy, Turner and Barrett. The defendants got a continuance in July of 1988 because the informant was not available and spent six months doing nothing. They have had their one reasonable continuance, their one reasonable opportunity to employ their own resources to locate the informant. They did not file the motion at issue until the day before trial. There is nothing before us detailing the prosecution's efforts (or lack thereof) to produce Marks, and nothing suggests prosecutorial bad faith. More to the point, the record reflects substantial defense dilatoriness, such that we may not say the the Circuit Court abused its discretion when it denied the motion for a continuance.

VI.
Bosarge and Ellis present several other issues. We have considered each with care and find that none merits either reversal or discussion. See Morea v. State, 329 So.2d 527 (Miss. 1976) and progeny, e.g., Saucier v. State, 562 So.2d 1238 (Miss. 1990); and Kennedy v. State, 531 So.2d 638 (Miss. 1988).
AS TO ANSEL BOSARGE, JR., CONVICTION OF DELIVERY OF A CONTROLLED SUBSTANCE AND POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE AND SENTENCE AS A HABITUAL CRIMINAL TO SIXTY (60) YEARS ON COUNT 1 AND SIXTY (60) YEARS ON COUNT 2 *1149 OF THE INDICTMENT IN CUSTODY OF MISS. DEPARTMENT OF CORRECTIONS, TO RUN CONSECUTIVELY WITH EACH OTHER, SUCH SENTENCE NOT TO BE REDUCED OR SUSPENDED, NOR SHALL HE BE ELIGIBLE FOR PAROLE OR PROBATION, AFFIRMED.
AS TO EDDIE STEVE ELLIS, CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE AND SENTENCE AS A HABITUAL OFFENDER TO SIXTY (60) YEARS IN CUSTODY OF MISS. DEPARTMENT OF CORRECTIONS, SUCH SENTENCE NOT TO BE REDUCED OR SUSPENDED, NOR SHALL HE BE ELIGIBLE FOR PAROLE OR PROBATION, AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] In October of 1988, the charge of delivery of a controlled substance against Ellis was dropped.
[2] See also, Stringfield v. State, 588 So.2d 438, 440 fn. 2 (Miss. 1991).
[3] Inexplicably, the prosecution did not exploit Bosarge's prior sales to Agent Sandefer on February 26 and March 4, 1988. The entrapment defense made admissible these ordinarily circumscribed facts. Rule 404(b), Miss.R.Ev.