IRVING, J.,
DISSENTING:
¶ 11. With due respect for the majority, I must respectfully dissent from its finding that the State successfully met its burden to rebut Lott’s testimony that the drugs he was convicted of selhng were supplied by the confidential informant, Lewis Young, who did not testify in this case. It necessarily follows, that I believe the trial court committed reversible error when it denied Lott’s motion for a directed verdict and that the majority perpetuates the error by affirming the decision of the trial court.
¶ 12. Lott testified that he was a drug addict who, from time to time, did odd jobs for Young in order to support his drug habit. According to Lott’s testimony, Young, a convicted drug dealer, sometimes paid him in cash for the odd jobs, while at other times he would pay him with drugs, specifically cocaine.
¶ 13. Lott testified that Young provided him with the drugs to sell to Agent Cheeks. Lott further testified that Young gave specific instructions to him regarding how to handle the sale to Cheeks. The record contains the following relevant testimony on this point:
Q. Okay. Now, let me ask you about Mr. Young. Did he [Young] ever ask you to deal drugs for him?
A. Not as far as the cocaine he didn’t, but he asked me to sell the narcotics he had. He said because if the people — the guy, I take it, was L.C. Cheeks was supposedly a guy he went to school with is what he told me and that if he knew they was [sic] his drugs, he wouldn’t be able to get top dollar for them and to not mention anything about cocaine or crack cocaine around him.
MR. FORTENBERRY: Judge, I would object to the relevance and any hearsay.
THE COURT: Well, avoid the hearsay, but I think it’s relevant enough.

BY MR. WARE:

Q. Okay. Mr. Lott, let’s talk about the alleged offense we are talking about today. All right. Do you remember when the alleged transaction took place on April 22nd, 1998?
A. Yes, sir.
Q. Okay. Where had you been that day?
A. Me and my wife — we had both been to Lewis — I believe it was the Exxon station and he said that his friend — because he had done got my younger brother, the one in the wheelchair and his step brother, he had done got them to do it a time or two. And he said Cain—
*132 MR. FORTENBERRY: Object to hearsay.
THE COURT: I’m going to let him answer that since it involves the C.I. Go ahead.
A. He said — he said, “Here’s you a chance to make you some cocaine.” He said, “I need you to do this for me. That way we can stay slick on all of our stuff.” And I said, “Well, what is it you want to do?” And he had the two morphines and the fourteen Lorcet 10s, and he said, “I’ll call you in a little bit and tell you where to meet me at. I’ll have the guy with me who’s wanting to buy them.”
Q. What happened next?
A. Me and my wife — I forget if it was at my brother’s house or my house — but anyway, went home, because we stayed, you know, in both places. And he called, which wasn’t too much longer after we had met him, and said to meet him at McNair Springs at 4:30.
Q. With what?
A. With the pills that he had brought and said not to take less than $130.00 for them and that after the transaction was made, he would come back by the house and bring us our cocaine and pick the money up, which he did.
* * *
Q. Now, why was Lewis saying you need to make the transfer instead of him since he was right there in the truck?
A. He was saying that his friend he went to school with — because that’s what I knowed [sic] him as. Mr. Cheeks — I knowed [sic] him as really a guy that Lewis went to school with in Yazoo City and that if he knew they were Lewis’ or coming from Lewis that he would want Lewis to give them to him at a cheaper price.
Q. All right. Did you get the money from Mr. Cheeks?
A. Yeah.
Q. What did you do with the money?
A. I held it until Lewis come pick it up.
Q. So, did you ever financially benefit from it?
A. No.
Q, You never kept any of the money?
A. No.
Q. Well, what would Lewis do for you for doing all of this stuff?
A. It was usually fifty to a hundred dollars’ worth of crack, rock cocaine.
¶ 14. Clearly this testimony by Lott established, unless rebutted by the State, that the drugs he sold to Agent Cheeks were supplied to him by confidential informant Lewis Young. The majority finds that the State successfully rebutted Lott’s assertion that the drugs were supplied by the confidential informant. This is what the majority says:
The State successfully rebutted Lott’s “supply and buy” claim. Lott’s claim that the confidential informant was also the supplier is contradicted by the testimony of Agent Cheeks and the audio tape of the transaction. Lott clearly told the confidential informant and Agent Cheeks that he would “have to call his source,” which strongly implies that his source was not present at the transaction. The State also offered evidence to show that Lott was predisposed to this crime.
Majority Opinion at page 130.
¶ 15. I agree with the majority that evidence of Lott’s predisposition to sell drugs was presented to the jury. However, in my judgment, there is no basis in the record of this case to find or conclude that *133 Lott’s story as to the source of the drugs was rebutted by the State; neither Agent Cheeks nor Officer Crawford did, or could, rebut Lott’s story. That had to be done by the confidential informant who did not testify during the trial. The majority reads far too much into Lott’s recorded statement that he had to call his source. Given Lott’s testimony at trial, it does not follow that this recorded statement was a reference to someone other than Lewis Young.
¶ 16. There is ample authority in this State that in “supply and buy” cases, the State’s failure to rebut the defendant’s testimony that the contraband was supplied by an agent of the State entitles the defendant to a directed verdict. Bosarge v. State, 594 So.2d 1148, 1146 (Miss.1991); Gamble v. State, 543 So.2d 184, 185 (Miss.1989); Jones v. State, 285 So.2d 152, 158-60 (Miss.1973). Therefore, because the State failed to rebut Lott’s testimony that the contraband was supplied to him by Lewis Young, a convicted drug dealer and confidential informant for the State, I would reverse and render Lott’s conviction.
SOUTHWICK, P.J., AND THOMAS, J., JOIN THIS SEPARATE OPINION.