**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2003-KA-01338-SCT**

*JAMES JEROME IRBY a/k/a JAMES J. IRBY a/k/a "MIKE"*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/23/2003 |
| TRIAL JUDGE: | HON. LARRY EUGENE ROBERTS |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES A. WILLIAMS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. DANIEL HINCHCLIFF |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/02/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., GRAVES AND RANDOLPH, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Subsequent to an undercover drug bust, James Jerome Irby was convicted and sentenced to sixty years in prison for selling cocaine.  Irby appeals, arguing several grounds of error. Finding no reversible error, we affirm.

**FACTUAL BACKGROUND**

¶2.     In November of 1999, the East Mississippi Drug Task Force, in cooperation with the Attorney General's office, set up an undercover purchase of cocaine from James Jerome Irby.

Undercover agent David Polson, the "buyer," used Randy Sharpston, a confidential informant, to gain the trust of the seller, Irby. Sharpston called Irby on a payphone and told him he had a buyer who was willing to pay $1200 for an ounce of cocaine. Irby agreed to make the sale, but told Sharpston he wanted to finish fishing first.

¶3.     As agreed, Polson, Sharpston, and Irby met at a local bar, and Irby directed the men to follow him to the Dixie Gas Station. Unbeknownst to Irby, Polson was wired with a recording device. Additionally, agents Joseph Turnage, Joel Walters, Tim Eldridge, and Karl Merchant monitored the operation from a vehicle by way of an audio surveillance system. Merchant used a video camera to record the operation from a distance.

¶4.     At the gas station, Irby pulled up beside Polson and Sharpston in a well-lighted area and, upon request, tossed a bag of powder cocaine into Polson's vehicle. Irby testified, while refusing to identify him by name, that a "Mr. Hair" was the one who provided the drugs, and that he had ridden in the passenger's seat throughout the transaction. Irby got out of his vehicle to collect the money and talked with the buyers for a moment after being paid.

¶5.     At a post-buy debriefing, Polson turned over the micro cassette tapes to Turnage and the cocaine to Walters. Turnage subsequently turned the tapes over to Walters. In a subsequent meeting with other agents, Polson positively identified Irby in a photo lineup.

¶6.     Walters died before trial. The audio and video tapes of the operation were consequently unavailable, because Walters had apparently secured the evidence at a separate location without telling anyone rather than putting it with the other case materials. At trial, Irby admitted to selling the drugs at the Dixie Gas Station that night. He offered the defense of entrapment, the substance of his argument being that he trusted Sharpston, Sharpston solicited his help in

2

locating drugs, and if he had known Sharpston was working with the police, he would have never sold him the cocaine. The jury found Irby guilty of the sale of cocaine, and the judge sentenced him to sixty years in prison in accordance with the Mississippi Uniformed Controlled Substance Act.

**ANALYSIS**

¶7.    Irby argues five grounds of reversible error: denial of due process as a result of the missing audio and video tapes, propriety of voir dire questioning, propriety of jury instructions, prejudicial nature of admitted evidence, and ineffective assistance of counsel.

### *1. Missing Tapes*

¶8.    We employ a two-part test when a defendant claims he is entitled to a new trial based on the prosecution's loss or destruction of evidence. First, we must determine whether the evidence would have played a significant role in the defendant's case. *Cox v. State*, 849 So. 2d 1257, 1266 (Miss. 2003). To play a significant role, the exculpatory nature and value of the evidence must have been apparent before the evidence was lost. *Id.* Second, the defendant must have no way of obtaining comparable evidence by any other means. *Id.* Additionally, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* (citing *Wilson v. State*, 574 So. 2d 1324, 1329 (Miss. 1990) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)).

¶9.    First, the missing tapes would not have played a significant role in providing valuable exculpatory evidence for Irby's defense. Irby argues that the tapes would have shown that "Hair was the drug dealer, not Irby." However, Irby's argument appears to rest on the presumption

3

that he would be exculpated as being only a participant if he could somehow demonstrate that he merely sold drugs that "Mr. Hair" provided. The fact remains that Irby admittedly sold the narcotics and was convicted of doing so, regardless of the role that this third party may have played. Second, the fundamentally important evidence that was lost with the tapes was recovered by the testimony of the officers and Sharpston, as well as Irby's own admission that he negotiated the deal and delivered the cocaine.

¶10. Furthermore, the record is totally devoid of any evidence that the loss of the tapes was the result of any bad faith by Walters or the other agents. Therefore, this failure to preserve potentially useful evidence does not constitute a denial of due process of law. Irby was not denied a fair trial, fundamental fairness, or due process as a result of the loss of the tapes. This issue is without merit.

### 2. *Voir Dire*

¶11. Irby argues that the prosecutor inappropriately exacted a promise from the jury when he asked:

> Now, what I want to ask you is this: If you believe those facts that I just related to you beyond a reasonable doubt and if the law is substantially what I said I believe that it would be, in other words, if that is what the judge tells you at the end of the case, is there anyone here for any reason whatsoever that could not find the defendant guilty of [the] sale of cocaine?

¶12. Although Irby now objects to the prosecutor's question, no such objection was made during trial. The failure to make a contemporaneous objection waives the right of raising the issue on appeal. *Palm v. State*, 748 So. 2d 135, 137 (Miss. 1999). As we have stated:

> [A] voir dire examination of jurors must be discretionary with the circuit judge, and in the absence of objection we have no way of knowing the

4

degree of influence it had, if any, on the ultimate verdict.'  A trial court is not put in error unless it had an opportunity to pass on the question.

*Id.* (alterations in original & citations omitted).  Irby is procedurally barred from raising this issue.

### 3. Instruction C-10

¶13.    Irby vaguely argues that the use of instruction C-10 regarding Sharpston's prior conviction "lacked integrity," and in light of the fact that his defense was entrapment "it was fundamentally unfair for [i]nstruction C-10 to merely couch Sharpston's prior conviction as only an impeachment of his testimony, as only a credibility question."  The instruction was given to caution the jury that it should disregard the criminal history of Sharpston, the confidential informant, other than for impeachment purposes.[1]  Instruction C-10, as amended, reads:

> The [c]ourt instructs the [j]ury that evidence has been admitted, based upon improper questions of [d]efense [c]ounsel, regarding an arrest and conviction of Randy Sharpston.  Defense [c]ounsel promised to provide additional testimony to make the evidence admissible and failed to do so.  The only admissible part of this evidence is that Mr. Sharpston admitted that he had been convicted of the possession of cocaine.  His conviction may only be used by you in determining his believability as a witness in this case and for no other purpose.  You may not make any other inference or draw any other type of conclusion based upon that conviction.  You shall not consider that part of the evidence involving arrest, charges made, or probation for any purpose whatsoever.

¶14.    At trial, the court asked Irby's attorney whether he had any objection to the instruction regarding the testimony.  The defense attorney responded in the affirmative and stated, "I think

---

[1]The prosecution requested the instruction as a result of Irby's attorney calling Sharpston to the stand with the promise to the court that he would somehow link the confidential informant's criminal history with his agreement to work as a confidential informant.  The defense attorney never did make the promised connection.

it is incumbent on the evidence to say it is error to allow the testimony, and I think it is highly prejudicial."

¶15.    After the prosecutor argued that the instruction should have never been allowed in except for the purpose of impeaching Sharpston's testimony, Irby's attorney interrupted the judge to say:

> BY MR. JORDAN:  I don't think . . . it was error to allow that testimony. It wasn't error.
>
> BY THE COURT: Well, to the extent that it was admitted for the purpose of impeaching his credibility, it was not erroneous; is that your point?
>
> BY MR. JORDAN: Yes, sir.

The trial court then proceeded without any further objection to C-10.

¶16.    Our standard of review for jury instructions is as follows:

> [T]he instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case. However, the trial judge may also properly refuse the instructions if he finds them to incorrectly state the law or to repeat a theory fairly covered in another instruction or to be without proper foundation in the evidence of the case.

*Howell v. State*, 860 So. 2d 704, 761 (Miss. 2003).

¶17.    Generally, when a jury instruction is offered at trial, it is the duty of the opposing party, in order to preserve the point for appeal, to state a contemporaneous objection in specific terms. *Nunnally v. R.J. Reynolds Tobacco Co.*, 869 So. 2d 373, 378 (Miss. 2004); *Young v. Robinson*, 538 So. 2d 781, 783 (Miss. 1989); *see also Holifield v. State*, 431 So. 2d 929, 930 (Miss. 1983) (general objection to jury instruction does not suffice to preserve issue for appeal).  Furthermore, on appeal a party may not argue that an instruction was erroneous for

6

a reason other than the reason assigned on objection to the instruction at trial.  *Young*, 538 So. 2d at 783.

¶18.    Irby's objection to instruction C-10 was ineffective to preserve the issue for appeal. First, at the trial court, Irby's attorney vaguely argued, "it is incumbent on the evidence to say it is error to allow the testimony, and I think it is highly prejudicial."  This broad argument thoroughly lacks the specificity our precedent requires to preserve the issue for appeal. Second, Irby's attorney initially objected to the instruction, but then later agreed with the judge that his only concern was that the testimony be admitted for the purpose of impeaching Sharpston's testimony.   In fact, that is exactly what the instruction achieved, albeit in a discursive way.  Even if we did somehow find that the objection was sufficiently specific, Irby cannot now argue that the instruction was in error since he dropped the objection and agreed that the instruction, as amended and given, was appropriate.  This issue is without merit.

### 4. Admission of Evidence

¶19.    Irby argues that "the disclosure to the jury . . . of Irby as being a big drug dealer," Sharpston's revelation that Irby had sold him drugs before, and the absence of the surveillance tapes was highly prejudicial and robbed him of due process of law.

¶20.    The admissibility of evidence rests within the discretion of the trial court, *Sturdivant v. State*, 745 So. 2d 240, 243 (Miss. 1999), and reversal is appropriate only when an abuse of discretion resulting in prejudice to the accused occurs.  *Id*.

¶21.    Irby argues that the absence of the surveillance tapes was prejudicial and robbed him of due process of law.  We have adequately dealt with the issue of the surveillance tapes in this opinion; therefore, no further discussion is warranted.

¶22.    Irby also argues that the trial court erred in admitting evidence of his history of drug dealing and his prior drug sales to Sharpston.    However, his defense of entrapment eviscerates this assignment of error of any validity.    Entrapment occurs when law enforcement entices someone into committing a crime he was not otherwise predisposed to commit solely for the purpose of trapping the individual into committing the offense and prosecuting him for it. *Tanner v. State*, 566 So. 2d 1246, 1248 (Miss. 1990).    When entrapment is pled as a defense, evidence of predisposition is always relevant and therefore admissible.    *Sanders v. State*, 678 So. 2d 663, 668 (Miss. 1996).    As we have previously stated, "a defendant is not entrapped - and enjoys no protection from prosecution - when he is already predisposed to commit the crime and when law enforcement officials merely furnish him the occasion or opportunity for doing so." *Tanner*, 566 So. 2d at 1248.

¶23.    Evidence of Irby's history of having a predisposition towards drug dealing was made relevant when he asserted the defense of entrapment.    Furthermore, the evidence of his predisposition to make drug sales to Sharpston was of particular relevance to his defense of entrapment.    Irby may not avail himself of the defense of entrapment and then cry foul when the resultant consequences of doing so work unfavorably for him.    This issue is without merit as well.

### 5. Ineffective Assistance of Counsel

¶24.    Irby points to a myriad of instances in which he claims that he received ineffective assistance of counsel.    The instances to which Irby points include, but are not limited to, Irby's claim that his trial attorney "fail[ed] to bore into Sharpston" on cross-examination, the attorney's alleged failure to clearly and precisely establish how Irby became a target for

8

entrapment, the attorney's alleged failure to object to certain questions by the State, the alleged failure to object "to the hearsay characterizations of Irby as a big drug dealer," and the attorney's supposed failure to "'tie up' the weight of the pressure the [t]ask [f]orce placed on Sharpston to make Irby get him drugs."

¶25. The touchstone for testing a claim of ineffectiveness of counsel must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The standard of review for a claim of ineffective assistance involves a two-prong inquiry: The defendant must demonstrate that his counsel's performance was deficient and that the deficiency prejudiced the defense of the case. *Carr v. State*, 873 So. 2d 991, 1003 (Miss. 2004); *Walker v. State*, 863 So. 2d 1, 12 (Miss. 2003) (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064). This requires that the defendant show that his attorney's "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Walker*, 863 So. 2d at 12 (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064). The defendant is required to prove both prongs of the test; otherwise, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Walker*, 863 So. 2d at 12 (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064). In all cases involving a claim of ineffectiveness, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Walker v. State*, 863 So. 2d 1, 12 (Miss. 2003); (citing *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065).

¶26. Irby has not demonstrated that his attorney's conduct was deficient, that it resulted in prejudice, or that the attorney acted unreasonably considering the circumstances of his client's

9

case. Irby merely alleges general claims of deficiency based on tactical decisions made by his trial counsel. He has not presented any action of his attorney that we have found to be unreasonable, and none of complaints he now lodges against trial counsel are we willing to deem "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." The evidence against Irby was overwhelming, notwithstanding the missing tapes. Upon Irby's own admission and failed entrapment defense, we can be certain that the guilty verdict was accurate and well-deserved. Any prejudice that Irby experienced at trial was a self-inflicted result of his choice to sell powder cocaine to Sharpston, and he may not now attempt to lay the blame at the feet of his trial attorney. This issue is without merit.

### CONCLUSION

¶27. Finding no merit in Irby's assignments of error, we affirm the circuit court's judgment.

¶28. **CONVICTION OF SALE OF COCAINE AND SENTENCE OF SIXTY (60) YEARS AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT HOPE OF PAROLE OR PROBATION, AND PAYMENT OF A FINE OF $10,000.00, COSTS OF $248.00 AND LAB FEE OF $300.00, AFFIRMED. APPELLANT IS GIVEN CREDIT FOR TIME SERVED.**

**SMITH, C.J., COBB, P.J., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**