[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1114 
¶ 1. Dung Thank Tran a/k/a Julio Tran was indicted by the grand jury in Grenada County, Mississippi for the crime of transferring cocaine to James Fullilove in violation of Miss. Code Ann. § 41-29-139 (a)(1) and (b)(1) (Rev. 1993). In addition, Tran was charged as a habitual offender because of a prior conviction of possession of cocaine and a prior conviction of aggravated assault, both in Grenada County on February 16, 1995. A trial in this case was held on January 26, 2000, the Honorable Joseph H. Loper, Jr. presiding. The jury found Tran guilty of transferring cocaine and Judge Loper thereafter sentenced Tran as a habitual offender under Miss. Code Ann. § 99-19-83 (Rev. 2000). Tran received a sentence of life imprisonment in the custody of the Mississippi Department of Corrections with no possibility of parole, probation or any other form of early release. Further, Tran's driver's license was suspended for a period of six months. Tran was ordered to pay all court costs as well as a fine of $5,000.
¶ 2. Following the verdict, Tran filed a motion for JNOV or, in the alternative, a new trial in this matter. These motions *Page 1115 
were denied by the trial court and Tran filed a timely appeal to this Court. Tran prays that this Court will reverse the decision of the lower court and remand for a new trial. He cites that the jury verdict was against the overwhelming weight of the evidence, that no juror could have found him guilty as a habitual offender and that there was not sufficient evidence with which to convict him or overrule his motion for JNOV or a new trial. Tran also asserts that evidence of entrapment by the police department and the bureau of narcotics should have prevented his conviction in this case.
 FACTS
¶ 3. On March 25, 1999, James Fullilove, a confidential informant working with the bureau of narcotics, helped the bureau and members of the Grenada Police Department arrange to buy crack cocaine from Tran. Fullilove, in cooperation with the police, called Tran from room number 161 of the Holiday Inn in Grenada and asked him to bring "three-sixteenths" to that room, where Fullilove would be when Tran arrived. Tran agreed that he would bring the substance to Fullilove. This phone conversation was taped with a digital audio system put in place by the bureau of narcotics and the police department and the tape was used against Tran in court. Additionally, the bureau and the police had set up room 161 with undercover surveillance cameras and other technical equipment in order to capture all of the movements and words of Tran and Fullilove throughout the entire transaction. The agents present on behalf of the bureau of narcotics were, at all times, aware of the goings-on in room 161 as they were set up to monitor the surveillance in adjoining room 163. These agents witnessed the transfer of a substance, later determined to be crack cocaine, from Tran to Fullilove.
¶ 4. The bureau of narcotics and the police department had supplied Fullilove $300 with which to purchase crack cocaine from Tran. Upon Tran's arrival at room 161 of the Holiday Inn, Fullilove testified that Tran did not say a word until he had examined the entire hotel room to make sure that he and Fullilove were alone. After finding the room clear of anyone else, Tran proceeded to transfer the three-sixteenths of a gram of crack cocaine to Fullilove by spitting a plastic bag holding the crack out of his mouth and into his own hand and then handing it over to Fullilove.
¶ 5. After the transaction was completed, the officers with the Grenada Police Department were given the word by the narcotics agents to rush in and arrest Tran before anyone could get hurt or the crack could be destroyed. The officers made a clean arrest of Tran and he was later indicted on the charge of the transfer of cocaine in violation of Miss. Code Ann. § 41-29-139 (a)(1) and (b)(1) (Rev. 1993). All of the events that took place in room 161 of the Holiday Inn were recorded with the digital audio and video equipment set up by the narcotics agents and the police department. The audio and video tapes were shown to the jury at Tran's trial after they were received into evidence with no objection by the defense.
¶ 6. Tran challenges the evidence on which he was convicted and claims that the bureau of narcotics, along with the Grenada police officers, wrongfully entrapped him into this transaction with Fullilove and that therefore, he should not have been convicted. He further argues, over evidence of the identity of the substance by the crime laboratory, that the content of the plastic bag which he spit out of his mouth was never shown to be crack cocaine. The jury heard all of the evidence presented by both parties, including the surveillance tapes, and determined that *Page 1116 
Tran was guilty of the transfer of cocaine to Fullilove. The jury was given an instruction by the judge on entrapment and they declined to find that Tran was unfairly set up by the bureau or the police to enter into this transaction.
¶ 7. Because of Tran's previous conviction on a possession of cocaine charge under the same statute and a separate conviction for aggravated assault, the trial judge sentenced Tran as a habitual offender. He was ordered to serve the remainder of his natural life in prison as well as to pay a fine and all court costs. In addition, the court ordered that his driver's license be suspended for a period of six months. Tran now appeals to this Court for relief.
 STANDARD OF REVIEW
¶ 8. Our standard of review regarding a motion for new trial is stated in McClain v. State :
 The challenge to the weight of the evidence via motion for a new trial implicates the trial court's sound discretion. Procedurally such challenge necessarily invokes Miss. Unif. Crim.R. of Cir. Ct. Prac. 5.16. New trial decisions rest in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable injustice. We reverse only for abuse of discretion, and on review we accept as true all evidence favorable to the State.
McClain v. State, 625 So.2d 774, 778 (Miss. 1993). See also Lewis v.State, 765 So.2d 493, 497 (Miss. 2000); Collier v. State, 711 So.2d 458, 461 (Miss. 1998); Herring v. State, 691 So.2d 948, 957 (Miss. 1997). The same standard is used to review overruled motions for a directed verdict and overruled motions for JNOV. See McClain, 625 So.2d at 778 ; Wetz v.State, 503 So.2d 803, 808 (Miss. 1987). Motions for directed verdicts and motions for JNOV are both for the purpose of challenging the legal sufficiency of the evidence. Noe v. State, 616 So.2d 298, 302 (Miss. 1993); McClain, 625 So.2d at 778. See also Strong v. State, 600 So.2d 199, 201 (Miss. 1992). Our standard of review regarding the legal sufficiency of the evidence is as follows:
 [W]e must, with respect to each element of the offense, consider all of the evidence — not just the evidence which supports the case for the prosecution — in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Wetz, 503 So.2d at 808. See also Lewis, 765 So.2d at 497; Taylor v.State, 672 So.2d 1246, 1255 (Miss. 1996). This Court must confine its decision to the evidence that appears in the record provided. Shelton v.Kindred, 279 So.2d 642, 644 (Miss. 1973). See also Wetz, 503 So.2d at 808.
¶ 9. "The jury is the sole judge of the credibility of witnesses, and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict." Billiot v. State, 454 So.2d 445, 463 (Miss. 1984). See alsoHarrell v. State, 583 So.2d 963, 964-65 (Miss. 1991); Davis v. State,568 So.2d 277, 281 (Miss. 1990); Gathright v. State, 380 So.2d 1276, 1278 (Miss. 1980); Campbell v. State, 278 So.2d 420, 423 (Miss. 1973). When this Court analyzes a jury's verdict to determine *Page 1117 
whether it is against the overwhelming weight of the evidence, we must keep in mind that the jury is the ultimate finder of fact. The law provides:
 Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into finding of fact sufficient to support their verdict. That resolution results from the jurors hearing and observing the witnesses as they testify, augmented by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution.
Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983).
 LEGAL ANALYSIS
¶ 10. While Tran cites four separate issues for this Court's review, they may all be narrowed down to the central question of whether the jury verdict was against the overwhelming weight of the evidence presented, thereby necessitating a reversal of Tran's case and a new trial.
¶ 11. We are convinced that the evidence decisively supports the verdict against Tran. As if the testimony of the narcotics agents and police officers, regarding the detailed events of the transaction between Tran and Fullilove, was not enough to convince a jury, there was the matter of the audio and video tapes which were allowed into evidence, showing the jury, in no uncertain terms, what happened in that hotel room that day.
¶ 12. We begin our discussion of the sufficiency of the evidence with Tran's argument that the State never proved that the substance offered into evidence at trial was, in fact, crack cocaine. We dismiss this allegation because the record shows substantial evidence of the identity of the substance as crack cocaine via the State's witness who worked for the crime lab at the time and personally tested the substance after receiving it from the bureau of narcotics. Further, Tran claims that even if this substance which was sent to the crime lab for testing was found to be crack cocaine, there was insufficient evidence to prove that it was actually the object that Tran spit out of his mouth and handed to Fullilove in the hotel room. We are not convinced of this assertion either.
¶ 13. While Fullilove may not have said the actual words "crack cocaine" when communicating what he wanted from Tran over the phone, it was clear that Tran was quite aware of what Fullilove meant because he brought a substance to Fullilove in the exact amount ("three-sixteenths") that Fullilove requested in their taped phone conversation. The same substance, as earlier pointed out, tested positive as crack cocaine and was identified at trial as the same crack cocaine transferred from Tran to Fullilove by a narcotics agent who was present at the scene of the transaction and obtained the substance after Tran's arrest.
¶ 14. Tran goes on to highlight certain portions of the testimony of that narcotics agent, Amy Spencer, in an attempt to convince this Court that, despite all of this confirmation, the State's case was still faulty because Spencer's identification of the crack cocaine at trial was improper. Spencer told the jury that the crack cocaine shown to her on the witness stand differed somewhat from the substance that she had previously received at the scene of *Page 1118 
the crime and later mailed to the crime lab for testing. Tran claims that because Spencer stated that the crack cocaine was not exactly the same at trial as it was when she first gained possession of it, this should warrant a finding of insufficient identification. We disagree. The record does indicate that the form of this cocaine was altered somewhat before the trial due to the testing procedures conducted by the crime lab. However, Spencer testified that the cocaine was handled according to standard procedure of the bureau of narcotics and had not been so conformed that she could not be certain that it was the cocaine transferred from Tran to Fullilove which she retrieved from officers immediately after Tran's arrest.
¶ 15. In an even further attempt to prove that the identification of the substance was defective, Tran challenges the chain of custody of the substance. The test for chain of custody is to find out whether there is any positive indication that the evidence has been tampered with or substituted. Alexander v. State, 749 So.2d 1031, 1039 (Miss. 1999);Gibson v. State, 503 So.2d 230, 234 (Miss. 1987). Whether conclusive evidence exists of any tampering or substitutions is left in the discretion of the trial court. Alexander, 749 So.2d at 1039; Nalls v.State, 651 So.2d 1074, 1077 (Miss. 1995). This Court must review the decision of the trial court regarding this matter by ascertaining whether such discretion was abused. Nalls, 651 So.2d at 1077.
¶ 16. In light of that standard, we are convinced that the trial court in this case was correct in accepting the evidence identified at trial as being crack cocaine and, more precisely, the same crack cocaine that was transferred from Tran to Fullilove on March 25, 1999. We find no credible evidence to the contrary and nothing that would suggest any tampering or substitutions of the crack other than Tran's blank assertions of such. The testimony of Spencer clearly indicated that the crack cocaine went through the usual and proper chain of custody and the trial judge and jury were clearly convinced that the cocaine identified by Spencer was the same cocaine which she retrieved from the scene of Tran's arrest and later mailed to the crime lab.
¶ 17. Moving to Tran's affirmative defense of entrapment in this matter, we discuss our reasoning for finding that Tran did not make a sufficient case for entrapment here, thereby negating his reliance on this theory. Tran would have us believe that he suffered an injustice when the bureau of narcotics and the Grenada police wrongfully trapped him by instigating the phone call to Tran from Fullilove, setting the ball rolling toward the events which would ultimately lead to his life imprisonment. We are not so convinced.
¶ 18. Entrapment has been defined by the Mississippi Supreme Court as "the act of inducing or leading a person to commit a crime not originally contemplated by him, for the purpose of trapping him for the offense." Morgan v. State, 703 So.2d 832, 835 (Miss. 1997). See alsoWalls v. State, 672 So.2d 1227, 1230 (Miss. 1996); Hopson v. State,625 So.2d 395, 399-400 (Miss. 1993). A classic case of entrapment is one in which law enforcement is both the supplier and the buyer of the contraband which is the subject of the defendant's arrest. Moore v.State, 534 So.2d 557, 558-59 (Miss. 1988); Barnes v. State, 493 So.2d 313, 316 (Miss. 1986). That is clearly not akin to the scenario we have here. We find that there is no indication of excessive involvement by the authorities in Tran's case.
¶ 19. The record reveals that the narcotics agents simply contracted with *Page 1119 
Fullilove to call Tran and ask for drugs. That is the extent of their involvement in the transaction up until the arrest of Tran. There is no evidence that the bureau of narcotics ordered Fullilove to take any extreme measures to induce Tran into accepting Fullilove's offer to buy crack cocaine from him. Nor is there evidence that the agents authorized Fullilove to entice Tran with anything in order to ensure his arrival at the Holiday Inn to complete the transaction. Fullilove was given $300 to pay Tran for the three-sixteenths gram of crack, which Tran readily provided. Testimony revealed that $300 is the current street value for that amount of crack. Therefore, Tran was given nothing more than what he would have received in any other sale to any other "customer."
¶ 20. Additionally, we can find no proof that Fullilove himself was forced to make this transaction or suffer some sort of consequence for not helping the bureau and the police. Fullilove admitted that he was knowingly and voluntarily working for the bureau of narcotics in this matter, as well as other previous drug related stings. Further, there is nothing whatsoever which would tend to show that Tran was anything but agreeable to Fullilove's offer to buy the crack cocaine. Fullilove did not have to twist his arm or offer him anything other than the face value of the crack. There was apparently no need because Tran immediately accepted the offer upon Fullilove's simple request. We are not persuaded that the authorities in this case became so overly-involved that it would have constituted entrapment on their part.
¶ 21. In its rebuttal of Tran's claims of entrapment, we find that the State has certainly proven that Tran had a predisposition to commit this crime. See Jacobson v. United States, 503 U.S. 540, 548-49 (1992);McCollum v. State, 757 So.2d 982, 985-86 (Miss. 2000); Johnston v.State, 730 So.2d 534, 536 (Miss. 1997); Hopson, 625 So.2d at 400-01. "A defendant is considered predisposed if he is ready and willing to commit the crimes such as are charged in the indictment, whenever the opportunity was afforded." Moore, 534 So.2d at 559. This is a question of fact to be decided by the jury and this Court cannot challenge the jury's findings unless there is not substantial evidence to support them. Seeid.; King v. State, 530 So.2d 1356, 1358-59 (Miss. 1988); Phillips v.State, 493 So.2d 350, 354 (Miss. 1986). "Where the jury resolves [this] point against the defendant, he is generally out of luck on appeal."Moore, 534 So.2d at 559.
¶ 22. In the instant case, evidence of Tran's predisposition to make a transfer of crack cocaine was extensive. First, as we have already noted, Tran was nothing but agreeable to the transaction with Fullilove from the get-go. There was no hesitancy on his part, as shown by the evidence in the record, including the evidence of the audio taped phone conversation between him and Fullilove. Tran was completely ready and willing to comply with Fullilove's request with no badgering or begging by Fullilove. "[R]eady commission of the crime amply demonstrates the predisposition of the accused." Jacobson, 503 U.S. at 548-49. Secondly, ample proof of predisposition was provided by the State.
¶ 23. In Hopson, the court allowed evidence of Hopson's prior drug related conduct to show predisposition, reasoning that "once a defendant has raised entrapment as a defense, the defendant places his or her predisposition to commit the crime charged at issue," thereby allowing this type of evidence before the jury. Id. at 402. When a defendant claims entrapment, any evidence of predisposition is always relevant andalways admissible. *Page 1120 Id. See also Tanner v. State, 566 So.2d 1246, 1248 (Miss. 1990); Moore, 534 So.2d at 558. See Darby v. State, 538 So.2d 1168
(Miss. 1989); Sayre v. State, 533 So.2d 464 (Miss. 1988). Hence, the evidence that Tran has previously been observed in activities involving illegal drugs was perfectly relevant and admissible in the instant matter. With all of the foregoing evidence, the State made an effective and conclusive rebuttal to Tran's allegations of entrapment. Therefore, Tran's claims against the bureau of narcotics and the Grenada Police Department must fail.
¶ 24. As to Tran's objections to his sentence as a habitual offender, we are convinced that the trial judge was justified in that decision. According to Section 99-19-83 of our Mississippi Code:
 Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
Miss. Code Ann. § 99-19-83 (Rev. 2000). Clearly, the State has shown that Tran was convicted previously of the crimes of possession of cocaine and aggravated assault. This satisfies the statute on the requirement that one must be convicted twice before and that one crime, the crime of aggravated assault, was a crime of violence. Further, the charges for these two crimes were brought separately and Tran served separate terms of more than one year in prison for these crimes.
¶ 25. Tran was convicted of both of these crimes on February 16, 1995. While the question as to whether Tran's convictions on these two crimes arose out of separate incidents is imminent, we resolve this issue in favor of the State. The law provides that prior convictions for crimes that may have occurred on the same date or under the same circumstances, may still be separate incidents within the terms of the statute. SeeNicolaou v. State, 534 So.2d 168, 173 (Miss. 1988); Walls v. State,759 So.2d 483, (¶ 34-37) (Miss.Ct.App. 2000) (Bridges, J., dissenting). However, because we have no further evidence as to the nature of these former convictions, including when or how the crimes occurred, we cannot speculate as to whether the presiding court was correct in finding that they arose out of separate incidents. Based on this fact and in light of the interpretation of the habitual offender statutes by the Mississippi Supreme Court in Nicolaou, we find that we cannot overturn the trial judge's decision to sentence Tran as a habitual offender.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF GRENADA COUNTY OFCONVICTION OF TRANSFER OF COCAINE AND SENTENCE AS AN HABITUAL OFFENDER TOLIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, TO PAYA FINE OF $5,000 AND DRIVING PRIVILEGES SUSPENDED FOR SIX MONTHS ISAFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO GRENADA COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., PAYNE, THOMAS, LEE,IRVING, MYERS AND CHANDLER, JJ., CONCUR. *Page 1121