# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-KA-02504-SCT

*KIRBY TATE a/k/a KIRBY GLENN TATE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/07/2003 |
| TRIAL JUDGE: | HON. LARRY EUGENE ROBERTS |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | J. NILES McNEEL |
| | PERCY STANFIELD |
| | GLEN W. HALL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. DANIEL HINCHCLIFF |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/24/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE COBB, P.J., DICKINSON AND RANDOLPH, JJ.

## DICKINSON, JUSTICE, FOR THE COURT:

¶1. Kirby Tate was convicted in the Circuit Court of Lauderdale County of possession and delivery of marijuana. He appeals his conviction to this Court, and we affirm.

¶2. Mississippi Drug Task Force agents arranged with confidential informant Gerald Warren to make a purchase of illegal drugs, or a "bust buy," from Kirby Tate. On March 10, 2003, Tate met Warren in the parking lot of El Cheapo's Tobacco Store on Highway 19 South in Lauderdale County, where he gave a quantity of marijuana to Warren. Warren gave a code word to narcotics agents over a hidden wire, and numerous drug task force agents swarmed the

scene, seized the marijuana delivered to Warren, and discovered three more packages of marijuana in Tate's possession: one on his person, one on the front seat of his vehicle, and one hidden in a secret compartment in his vehicle. The agents arrested Tate on charges of possession with intent to deliver and delivery of more than an ounce but less than a kilogram of marijuana.

¶3. Tate was convicted by a jury in the Circuit Court of Lauderdale County of one count of delivery of more than an ounce but less than a kilogram (435.3 grams) of marijuana and of one count of possession of more than an ounce but less than a kilogram (531.0 grams) of marijuana with intent to distribute. Because Tate had two prior felony convictions,[1] the trial court sentenced Tate, as a habitual and enhanced offender under Miss. Code Ann. §§ 99-19-81 and 41-29-147,[2] to serve sixty (60) years in the custody of the Mississippi Department of

---

[1]Tate pled guilty to two counts of sale of marijuana less than 1 ounce in the Circuit Court of Lauderdale County, and was sentenced on the 28th day of January, 1991 to serve in the Mississippi Department of Corrections a term of three (3) years on each count. Each felony count and conviction was upon charges separately brought, and arising out of separate incidents at different times.

[2]Miss. Code Ann. § 99-19-81 provides:

Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 41-29-147 provides:

[A]ny person convicted of a second or subsequent offense under this article may be imprisoned for a term up to twice the term otherwise authorized, fined an amount up to twice that otherwise authorized, or both.

For purpose of this section, an offense is considered a second or subsequent

Corrections for each of the two counts, without the possibility of such sentence being reduced or suspended. The two sentences are to run concurrently, but Tate will not be eligible for early release. Thus, given his age at the time of sentencing, Tate will not be released from prison until he is ninety-nine years old.

## ANALYSIS

### I. Tate's prior convictions.

¶4. Prior to trial, the State filed a Notice of Intent to Use Felony Convictions to Prove Intent under Mississippi Rule of Evidence 404(b).[3] Specifically, the State's claimed it intended to admit Tate's two prior convictions of the sale of marijuana, less than an ounce. The trial court stated that it would reserve its ruling on the motion until testimony had been presented concerning the entrapment defense, and the court could determine whether the probative value of the convictions was outweighed by the danger of unfair prejudice.

¶5. After Tate's direct examination, the State made a motion for admission of the prior convictions under Rule 404(b). The State claimed that, since Tate claimed he had been entrapped, the prior convictions were offered to show predisposition and intent to commit the crime. Over objection, the trial court granted the motion and allowed the prior convictions to

---

offense, if, prior to his conviction of the offense, the offender has at any time been convicted under this article or under any statute of the United States or of any state relating to narcotic drugs, marihuana, depressant, stimulant or hallucinogenic drugs.

[3]M.R.E. 404(b) states:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

3

be admitted reasoning that entrapment had been raised as a defense. The court stated for the record:

> It is the Court's considered opinion that under the law of the State of Mississippi that once a defendant claims a defense of entrapment that pursuant to Tran versus State[4] decision and other State Supreme Court decisions, any evidence of predisposition to commit a crime is relevant and admissible. That case says that any evidence of predisposition is always relevant and always admissible. Any prior bad acts relating to the possession or transfer or sale or dispensing of controlled substances, I think, is admissible.

¶6. The State then cross-examined Tate about his January 28, 1991, conviction on two counts of the felony offense of the sale of marijuana, less than one ounce.

¶7. On appeal, Tate argues that the trial court erred in allowing the State to question him about his prior convictions because these convictions occurred more than ten years prior to the date of the current trial. Tate asserts that before evidence may be admitted under M.R.E. 404(b), the court must conduct the balancing inquiry under M.R.E. 403[5] to determine whether the evidence is more prejudicial then probative, and that the remoteness of the time of these convictions should have made them inadmissible. Tate also points out that the trial court granted his motion to exclude his prior convictions for purposes of impeachment under M.R.E. 609 (b).[6] The trial court held Tate's prior convictions to be inadmissible for purposes of

---

[4]The trial judge refers to ***Tran v. State***, 785 So. 2d 1112 (Miss. Ct. App. 2001).

[5]M.R.E. 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[6]M.R.E. 609 does not allow convictions to be admitted if a period of more than ten years has elapsed since the date of the conviction. M.R.E. 609(b) states in pertinent part: "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction . . . unless the court determines, in the interests of justice, that the probative value of the

4

impeachment because they fell outside the ten-year period. Tate argues that the trial court should have used the same reason to exclude the conviction for purposes of Rule 404(b) when conducting a Rule 403 balancing inquiry. Tate argues that the State should not have been allowed to "come in the back door" and present the convictions as evidence of intent under M.R.E. 404(b) while they were inadmissible for purposes of M.R.E. 609.

¶8. The State argues that Tate's prior convictions were admissible because Tate put forth an entrapment defense that put his intent or predisposition to commit a crime at issue, and M.R.E. 404(b) allows prior convictions to be admitted in such a case. The State points to the trial court's reasoning as stated on the record in the trial transcript, quoted above. The State also cites *Robert v. State*, 756 So. 2d 806, 808 (Miss. Ct. App. 1999), and *Tran v. State*, 785 So. 2d at 1119-1120, for the proposition that when entrapment is pled as a defense, any evidence of predisposition is always relevant and therefore always admissible. While this proposition may have been the premise adopted by the trial court, this is not a complete statement of the law.

¶9. The standard of review this Court uses regarding admission or exclusion of evidence is the abuse of discretion standard. *Herring v. Poirrier*, 797 So. 2d 797, 804 (Miss. 2000). Where such error is found, this Court "will not reverse unless the error adversely affects a substantial right of a party." *Ladnier v. State* 878 So. 2d 926, 933 (Miss. 2004) (quoting *Whitten v. Cox*, 799 So. 2d 1, 13 (Miss. 2000), citing *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 113 (Miss. 1999)).

---

conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect."

5

¶10.    Tate presented an entrapment defense at trial.   Tate claimed that the only marijuana belonging to him was that found on his person and that the other marijuana found in his vehicle did not belong to him .   Tate asserted that Warren had planted the other two packages of marijuana at his home without his knowledge on March 9, 2003.   Tate further claimed that Warren later called him and told him that he had left marijuana in the shed at Tate's home. Tate's defense at trial was that when he met Warren on March 10, 2003, he was not selling any marijuana but only trying to return it to Warren.   A classic case of entrapment is one in which law enforcement is both the supplier and the buyer of the contraband which is the subject of the defendant's arrest.   *Moore v. State*, 534 So. 2d 557, 558 (Miss. 1988).    Tate alleged that the confidential informant, Warren, was both the supplier and the buyer of the marijuana, and so the trial court found that he had presented an entrapment defense.

¶11.    Entrapment has been defined as "the act of inducing or leading a person to commit a crime *not originally contemplated* by him, for the purpose of trapping him for the offense." *Hopson v. State,*  625 So. 2d 395, 399 (Miss. 1993) (emphasis added) (citing *Phillips v. State*, 493 So. 2d 350, 354 (Miss.1986); *McLemore v. State*, 241 Miss. 664, 675, 125 So.2d 86, 91 (1960)). The defense of entrapment is affirmative and must be proved by the defendant.   If the defendant already possessed the criminal intent, and the request or inducement merely gave the defendant the opportunity to commit what he or she was already predisposed to do, entrapment is not a defense. *Id.* (citing *Bush v. State*, 585 So. 2d 1262, 1264 (Miss. 1991)). Thus, predisposition to commit the crime becomes an issue when a defendant raises an entrapment defense.

6

¶12. This Court has held that a defendant's prior drug activity is admissible to show predisposition. In **Hopson**, this Court held that an objection to the admission of the defendant's prior drug-related activities was properly overruled, "as these activities showed [his] predisposition to the commit the alleged offense." 625 So.2d at 402.

¶13. In light of this Court's opinion in **Hopson**, Tate's prior convictions were admissible for the purpose of showing Tate's predisposition to selling marijuana. However, all evidence must be filtered through M.R.E. 403, to ensure its probative value outweighs its prejudicial harm. **Johnson v. State**, 655 So. 2d 37, 42 (Miss. 1995). Specifically, this Court has held that evidence which is admissible under Rule 404(b) must be tested under Rule 403. **Jenkins v. State**, 507 So. 2d 89, 93 (Miss. 1987).

¶14. The record in this case does not show that the trial court balanced the evidence of Tate's prior convictions under M.R.E. 403 before allowing it to be admitted.[7] In fact, the judge never mentioned the word "prejudice," and his comments suggest that the trial court admitted the convictions under an assumption that this evidence was "always admissible," without considering the weight of its prejudicial effect against its probative value. Specifically, the trial court stated: "[Tran v. State] says that any evidence of predisposition is always relevant and always admissible."

¶15. Though the trial court correctly quoted **Tran**, the quoted language does not completely state the law. In **Tran**, the Court of Appeals did state that "[w]hen a defendant claims

---

[7]The trial court did show concern about the prejudicial effect of the prior convictions while discussing pre-trial motions. However, there is no evidence in the record to suggest that the trial court considered the probative value and prejudicial effect of this evidence when ruling that it was admissible under **Tran v. State**.

entrapment, any evidence of predisposition is *always* relevant and *always* admissible." 785 So. 2d at 1119. In so holding, the ***Tran*** court relied on this Court's decision in ***Hopson,*** 625 So. 2d at 402***. See Tran***, 785 So. 2d at 1119-20. ***Hopson*** in turn quotes this Court's decision in ***Tanner v. State***, 566 So. 2d 1246, 1248 (Miss. 1990), in which this Court stated: "[o]nce a defendant makes out a prima facie case that he was entrapped . . . predisposition becomes a fact of consequence and evidence thereof becomes relevant and, hence, *always* admissible." ***Id.***, citing M.R.E. 401; see ***Moore v. State***, 534 So. 2d at 558, 560; ***Sayre v. State***, 533 So.2d 464, 466 (Miss. 1988).

¶16.    While prior convictions which have been found relevant  under M.R.E. 401, and which satisfy M.R.E. 404(b) may be *potentially* admissible to prove disposition, they may be allowed into evidence only after passing a Rule 403 balancing test, which must be conducted on the record. ***Holland v. State***, 656 So. 2d 1192, 1196-97 (Miss. 1995); ***Jenkins***, 507 So. 2d at 89. To the extent that ***Tanner*** and its progeny suggest that such evidence may be admitted without an on-the-record analysis under Rule 403, they are hereby clarified, and their conflict with this Court's decisions in ***Jenkins*** and ***Holland*** is hereby resolved.

¶17.    In Tate's case, evidence of his prior drug activity was admissible under Rule 404(b) because Tate presented an entrapment defense, but the Rule 403 inquiry was required before the convictions could be admitted.  The trial court should have conducted this inquiry on the record, and the failure to do so was error.

¶18.    However, this Court has held that errors may be deemed harmless where "the same result would have been reached had they not existed." ***Burnside v. State***  882 So. 2d 212, 216

8

(Miss. 2004) (quoting **Kolberg v. State**, 829 So. 2d 29, 49 (Miss. 2002)). "[E]ven where error has occurred, we will not reverse a conviction where the overwhelming weight of the evidence supports the guilty verdict." **Id.** The court gave a limiting instruction to the jury regarding the purpose for which these convictions could be considered, and specifically instructed the jury it could not consider the convictions in determining whether Tate was guilty of the crime for which he was on trial.[8] Furthermore, overwhelming evidence of Tate's guilt was presented at trial. Thus, the trial court's failure to conduct an on-the-record analysis under Rule 403 was harmless error.

## II. Tate's June 20, 2003, and September 12, 2001, arrests

¶19. Tate argues that the trial court should not have allowed the State to introduce evidence of his June 20, 2003, arrest for possession of marijuana and possession with intent to deliver and his September 12, 2001, arrest for possession of marijuana. The trial court allowed the State to cross-examine Tate about these arrests after concluding that Tate had "opened the door" by claiming on direct examination that he was no longer involved in selling drugs.

---

[8]Specifically, the jury instruction stated:

The Court instructs the jury that the introduction into evidence by the State of the prior convictions of Kirby Glenn Tate for the sale of marijuana less than on (1) ounce on January 28, 1991, was offered in an effort to prove motive, intent, preparation, plan, knowledge, identify or absence of mistake or accident on the part of the Defendant when he allegedly was in possession of marijuana on March 10, 2003, with intent to distribute. You may give this evidence such weight and credibility as you deem proper under the circumstances. However, the Court further instructs the Jury that under the circumstances you can not and must not consider this testimony in any way regarding whether or not Kirby Glenn Tate is guilty or not guilty of the charge for which he is presently on trial, that being for the unlawful possession of marijuana with intent to distribute and delivery of marijuana.

9

¶20.    Tate further argues that the admission of the June 20, 2003, arrest is reversible error because this arrest occurred after the incident for which he was on trial and because this arrest was not a rebuttal of Tate's testimony. He points out that, in his trial testimony, he acknowledged that he smoked marijuana, but denied selling it, and that his arrest for possession of marijuana does not rebut his statement that he did not sell marijuana. Furthermore, Tate points out that his September 12, 2001, arrest was dismissed or nolle prossed, and therefore was not a conviction or active charge, and should not have been presented to the jury.

¶21.    The State responds that Tate's June 20, 2003, arrest was admissible in response to Tate's testimony that he did not engage in marijuana commerce.[9] The State points out that the arrest was for possession of marijuana with intent to deliver, and therefore it does rebut Tate's testimony that he did not sell marijuana. The State further says Tate "opened the door" when he claimed he no longer sold marijuana, and the conviction was properly admitted to impeach him under *Morgan v. State*, 741 So. 2d 246, 254-55 (Miss. 1999).

¶22.    The State points out that *Smothers v. State*, 756 So. 2d 779, 784 (Miss. Ct. App. 1999), holds that a conviction that occurred subsequent to the crime for which the defendant is on trial is properly admissible.

¶23.    We hold the trial court did not abuse its discretion in allowing the State to question Tate about the June 20, 2003, and September 12, 2001, arrests as rebuttal to Tate's testimony. In ruling on this issue, the trial court stated:

---

[9]During his direct testimony, Tate testified, "I ain't like that no more, you know," and "No, I might pass out a doobie or something to my friends. I said, I don't sell. I repeatedly told him, I smoke weed, I don't sell weed. I ain't denied this." He then went on to say, "I told the truth."

I know it is probably a close question, but I think by claiming such in the presence of this jury that he has invited cross-examination on that subject. The proverbial barn door has been opened. That is, Supreme Court Justice Robertson alluded to in one case of how wide the door was opened.

In my considered judgment as a Trial Judge, the door is open sufficiently wide for the State to be able to question him about the June incident, so that is going to be my ruling. I'm going to allow cross-examination on other acts of alleged misconduct relating to the issue of this defendant's previous disposition as well as evidence of a later incident since the door, in my judgment, has been sufficiently opened on direct examination for the State in the normal course of cross-examination to question the accused regarding that assertion to the jury that he no longer has been involved in drugs.

¶24. We find the learned trial judge's reasoning to be exactly correct. In light of Tate's testimony, the trial court did not abuse its discretion in ruling that Tate had "opened the door" for cross-examination on his drug-related activities. Moreover, Tate has not shown prejudice or that a substantial right has been adversely affected by this ruling, and "for a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party." *K-Mart Corp. v. Hardy ex rel. Hardy*, 735 So. 2d 975, 983 (Miss. 1999) (citing *Hansen v. State*, 592 So. 2d 114, 132 (Miss. 1991)).

### III. Limiting instruction concerning Tate's arrests

¶25. Tate claims the trial court committed reversible error by not giving a limiting instruction concerning his arrests on June 20, 2003, and September 12, 2001. Tate argues that trial judges are required to give a limiting instruction sua sponte whenever Rule 404(b) evidence is offered, unless the party objecting to the evidence objects to the limiting instruction under *Smith v. State* 656 So. 2d 95 (Miss. 1995).

11

¶26. The State points our that *Smith* was recently overruled in *Brown v. State*, 890 So. 2d 901, 913 (Miss. 2004). In his reply brief, Tate concedes that *Brown* overruled *Smith*, but submits that the trial court still should have given a sua sponte instruction.

¶27. The record shows no request by Tate for the instruction he now argues he should have received. Issues not brought before the trial court are deemed waived and may not be raised for the first time on appeal. *Wilcher v. State*, 479 So. 2d 710, 712 (Miss. 1985). Thus, Tate is procedurally barred from raising this issue.

¶28. As for Tate's argument that the trial court should have granted this instruction sua sponte, this Court held in *Brown* that a trial court is not required to issue a sua sponte instruction, and that the burden should be upon counsel to request a limiting instruction if the defense desires one. The Court reasoned:

> Yet *Smith* and its progeny place a great burden upon the trial court. In many instances a limiting instruction from the bench can actually focus a jury's attention on the sensitive testimony. Because a defendant might be prejudiced by such an instruction, we allowed trial counsel to actually object to the sua sponte instruction. *See Robinson v. State*, 735 So.2d 208, 210 (Miss.1999). However, it is not per se prejudicial to a defendant if a jury simply hears an isolated instance of a crime or bad act in the course of a trial.
>
> The burden should properly be upon the trial counsel to request a limiting instruction. This was our rule before *Smith*, in accord with Rule 105 of the Mississippi Rules of Evidence. The rule provides in pertinent part that "[w]hen evidence which is admissible ... for one purpose but not admissible ... for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." Miss. R. Evid. 105 (emphasis added). We struggled in *Smith* to require judges to issue the sua sponte ruling, since that would contradict "a rule so clear" as M.R.E. 105. 656 So.2d at 100. Today we abandon *Smith's* requirement that a judge issue a sua sponte limiting instruction and return to the clear language of Rule 105. The rule clearly places the burden of requesting a Rule 404(b) limiting instruction upon counsel.

890 So. 2d at 913. Jury instructions that reference prior arrests and convictions may be counterproductive to the defendant. While serving to limit the jury's consideration of the prior wrongs, such instructions also remind and emphasize to the jury that the defendant committed prior bad acts. Whether to request such an instruction is a matter of trial strategy in the exclusive province of the defendant, in consultation with his or her attorney. Without a request by defense counsel, the trial court properly did not sua sponte give a limiting jury instruction.

### IV. Potential Witness Brittany Warren

¶29. Tate submits that after resting, the defense was approached by Gerald Warren's daughter, Brittany Warren, who claimed that she could provide information that would impeach her father's testimony. Tate requested that he be allowed to reopen his case and call Ms. Warren as a witness. The trial court allowed the State to interview Ms. Warren, and the state objected to the defense calling her as a witness. The trial court sustained the objection, and the defense then made an offer of proof of what Ms. Warren would have testified:

> One, that she is approximately 14 years old and is the daughter of one Gerald Warren, a witness in this cause.
> Two, that since March 12th of 2003, she has been in the home of one Gerald Warren and seen him in possession of four to five pounds of marijuana stored in various Folger coffee cans.
> Three, that she has seen Gerald Warren, her father, in possession of numerous tablets of Lortabs.
> Four, that Gerald Warren has smoked marijuana with her, given her marijuana, and smoked marijuana in her presence; and they have smoked it in the presence of each other.
> Next number, that Gerald Warren, when asked if he set up Kirby Tate for $2,000 and a pound of marijuana given to him by the East Mississippi Task Force, one Karl Merchant in particular, the response of her father Gerald Warren was, Yes, that is the way it went down.
> Next number, that Gerald Warren has offered this child to a drug dealer by the name of Brock in exchange for drugs, and that she refused to cooperate

in the offer of sex for drugs; the offer being made by her father, once again, Gerald Warren.

¶30. Tate argues that the trial court had the discretion to allow Ms. Warren to testify under ***Wells-Lamont Corp. v. Watkins***, 247 Miss. 379, 151 So. 2d 600, 604 (1963). Tate further argues that it was fundamentally unfair not to allow Ms. Warren to testify because Gerald Warren's testimony was the "crux" of the State's case against Tate, and Ms. Warren's testimony was crucial to the defense.

¶31. The State argues that Ms. Warren's proffered testimony demonstrates that she was not a material witness, that she did not have any first hand knowledge of any material fact, and that virtually all of her testimony was already in evidence and therefore could be excluded as cumulative under M.R.E. 403. The State directs us to the trial court's reasoning for not permitting the testimony:

> All right. I'm adequately informed. Let me make a couple of comments. We are now on Friday afternoon. It is 2:15 p.m., and at 12:00 noon, ten minutes after 12:00, in the presence of the jury, the defense announced that it had rested its case. This new witness apparently became . . . to defense counsel during the lunch break after they had rested their case, and they have now requested an opportunity to reopen their case and present Ms. Brittany Warren as a witness, who I understand is either a 13- or 14-year-old minor.
>
> A couple of comments. In my 25-year career on the bench, I don't think I've ever seen a case where there has been so much alleged – so many alleged threats or so much animosity expressed between the various witnesses and the supporters of each side in this case.
>
> A good example is Wednesday, the accusations by defense that narcotics officers are roughing up the defense witnesses . . . And when the smoke clears, it appears that law enforcement officers received a phone call from . . . the 15-year-old son of the confidential informant, Gerald Warren, saying that his daddy is going to be blown away in the courthouse . . .
>
> There are accusations throughout this trial that the lives of the confidential informant and his family have been threatened; that the welfare of numerous people allegedly have been threatened in this case. Now we have a

14

circumstance of a minor child who apparently is of almost sufficient age to be presumed competent . . .

She is here. And she allegedly is supposed to testify that her father made some admission, quasi admission . . . The mother of this child, from what I understand in chambers, after having an in chambers conference with her and her attorneys and the District Attorney, would prefer that her daughter not be involved with this calamity of a trial at all.

The state is complaining because they claim surprise, an inadequate opportunity to prepare to meet the testimony of Ms. Warren; that Brittany Warren has been subject to violation of the Rule of Sequestration; that she has been talked to about alleged testimony by other witnesses; that the jury has not been voir dired or questioned about their knowledge of a minor child named Brittany Warren who might be a possible witness. There are all types of unusual circumstances.

Further, the state claims that this is trial by ambush . . .

Having considered all of that, and the fact that this is Friday afternoon of the trial, I think unusual circumstances do exist and that permitting this witness to be called in violation of the discovery rule would be inappropriate . . . And due to all the many circumstances surrounding this, plus the putting on of a 13-year-old child that, in effect, would testify against the interest of her father who is in support of the law enforcement officer is in my judgment inappropriate.

She has just recently been through drug treatment, some type of treatment herself. I think it is inappropriate. I am not going to put that girl through the calamity of testifying here in this courtroom before this jury.

¶32. This Court reviews the trial court's admission or exclusion of evidence for an abuse of discretion. ***Herring v. Poirrier***, 797 So. 2d at 804. We hold that the trial court did not abuse its discretion when it ruled that Brittany Warren could not testify. The trial court explained its reasoning thoroughly on the record, and the decision was within the court's discretion.

**V. The District Attorney's closing argument**

¶33. Tate says the district attorney made misleading and improper statements in closing argument. These statements were as follows:

And sympathy because he's got children. That is not what you should consider. The law is designed when somebody has the kind of problem that Mr. Tate has and when somebody violates the law like this time and time and time and time again, something needs to be done to stop it, to get him through that situation,

15

pay whatever debt to society that he might get, and then get back with his children; not while he is selling marijuana, not while he is possessing marijuana, not while he is smoking two marijuana cigarettes a day. He can get back with them when that's over, when those things are secured by the law.

¶34. Tate asserts that the prosecutor's implication that he would "get back with his children" when his sentence was completed was misleading and improper. Tate says the statements created the impression that he would simply serve some period of incarceration and then be released to his family while his children were still young, creating a false picture of the incarceration time. Tate argues that it is improper for a prosecutor to tell a jury about a defendant's sentence at the guilt phase of the trial, and therefore these remarks were improper and an abuse of the prosecutor's privilege. Tate argues that these remarks warrant reversal of his conviction.

¶35. The record indicates, and Tate does not dispute, that the defense made no objection to the prosecutor's remarks at trial. This issue is thus procedurally barred. *Tubbs v. State*, 402 So. 2d 830, 835 (Miss. 1981). Tate argues that his conviction should be reversed despite the fact that he did not object at trial under *Williams v. State*, 445 So. 2d 798, 810 (Miss. 1984), in which this Court stated that improper remarks by a prosecutor warrant reversal even without a defense objection when there is a "most extreme and intolerable abuse of his privilege."

¶36. We find that the prosecutor's remarks do not rise to the level of a "most extreme and intolerable abuse of his privilege." Tate is entitled to no relief on this issue.

**VI. Tate's motion for a mistrial.**

16

¶37. Tate argues that the trial court should have granted his motion for a mistrial on the basis that several defense witnesses were intimidated by Lauderdale County law enforcement officials.

¶38. The record indicates that on the second day of trial, defense counsel requested an evidentiary hearing outside the presence of the jury because that two of its witnesses had been "physically roughed up" and intimidated by law enforcement officials the day before. Defense witnesses Warren Geisler and Frances McLemore testified that they were approached by three officers who intimidated and physically assaulted them. Specifically, they stated that the officers took them into a staircase, threw them against a wall, read them their rights, dragged them down the stairs and across the street to the jail and then placed them in separate interrogation rooms and questioned them about a threat they had allegedly made against state witness Gerald Warren's life. Furthermore, McLemore testified that he had required emergency room attention after this incident because he twisted his leg while being pulled down the stairs. Tate argues that he was entitled to a mistrial because the witnesses felt harassed, frightened, and intimidated about testifying on his behalf. Two of the law enforcement officials testified and denied any physical abuse of the defense witnesses.

¶39. The trial court refused to grant a mistrial, stating:

> I don't see any justification for a mistrial in this case. As I understand it, law enforcement officers received a phone call from a 15-year-old child of the CI who relayed a conversation that he had with his younger sister, 13, that two of these witnesses . . . Geisler and McLemore, allegedly made a threat that the CI would be gunned down in the courthouse. And the officers were following up on that investigation by questioning these two gentlemen and searching them to make sure that they were not armed before they were escorted across the street to the Sheriff's Office to be questioned. And upon being questioned, they were

17

thereafter released. I see no justification to grant a mistrial based on that in this case.

¶40. Characterizing Tate's argument as frivolous, the State points out that both of these witnesses did testify at trial, and therefore they must not have been too intimidated. The State asserts that the trial court did not abuse its discretion in refusing to grant a mistrial based on the facts presented by these witnesses. We agree.

¶41. This Court reviews motions for mistrial under an abuse of discretion standard. The trial court must declare a mistrial when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant's case. *Gossett v. State*, 660 So.2d 1285, 1290-91 (Miss. 1995). The trial judge is permitted considerable discretion in determining whether a mistrial is warranted since the judge is best positioned for measuring the prejudicial effect. *Id.* (citing *Roundtree v. State*, 568 So. 2d 1173, 1178 (Miss. 1990)).

¶42. The trial judge was in the best position to observe these witnesses and to determine the effect this alleged incident had on the trial. Both witnesses later testified. Tate has not shown how this incident prejudiced or damaged his case.

### VII. Overwhelming weight of the evidence

¶43. Tate argues that his defense was prejudiced by the cumulative effect of the admission of his other convictions into evidence, the trial court's refusal to allow Brittany Warren to testify, and the prosecutor's remarks at closing argument. Tate further argues that the effect of all of these errors denied him a fair and impartial trial and that his case should be reversed and remanded.

18

¶44.    A motion for new trial challenges the weight of the evidence. *Sheffield v. State*, 749 So.2d 123, 127 (Miss. 1999).    "The motion for a new trial is addressed to the trial judge's sound discretion." *Gavin v. State,*  473 So.2d 952, 956 (Miss.1985) (citing *May v. State*, 460 So.2d 778, 781 (Miss. 1984); *Neal v. State*, 451 So.2d 743, 760 (Miss. 1984)).   A reversal is warranted only if the trial court abused its discretion in denying a motion for new trial. *Id.* (citing *Gleeton v. State*, 716 So.2d 1083 (Miss. 1998)). This Court has stated that "it is well established that matters regarding the weight of the evidence are to be resolved by the jury." *Neal v. State*, 451 So.2d at 758.

¶45.    The trial court did not abuse its discretion in refusing to grant a new trial.  Tate admitted that at least some of the marijuana found at the scene of the arrest belonged to him, and the testimony of Warren and the law enforcement officers established that Tate was in possession of marijuana and participating in what he believed to be a sale of marijuana. While evidence was presented on Tate's behalf that contradicted the State's evidence, these were factual disputes properly resolved by the jury, and the trial court cannot be said to have abused its discretion when it refused to grant Tate's motion for a new trial.

### VIII. Cruel and unusual punishment.

¶46.    Tate argues that his sentence violated the United States and Mississippi Constitutions' prohibitions of cruel and unusual punishment. Tate claims his sentence should be evaluated under the proportionality analysis set forth by the U.S. Supreme Court in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L. Ed. 2d 637 (1983), which consists of three factors: (I) the gravity of the offense and the harshness of the penalty; (ii) a comparison with the sentences

imposed on other criminals in the same jurisdiction; and (iii) a comparison with the sentences imposed for commission of the same crime in other jurisdictions. *Id.* at 291-292.

¶47. Tate submits that his sixty year sentences without parole will leave him incarcerated until he is ninety-nine years old, should he live that long, and therefore his sentence is for all practical purposes a life sentence. Tate asserts that if his sentence is affirmed, it will be the only instance in the published opinions of Mississippi in which a defendant received sixty years without parole for a drug offense when none of his prior convictions involved crimes of violence.

¶48. This Court has held that sentencing is within the discretion of the trial court and is not subject to appellate review if it is within the limits prescribed by statute. *Nichols v. State*, 826 So. 2d 1288, 1290 (Miss. 2002); *Hoops v. State*, 681 So. 2d 521, 537 (Miss. 1996). In *Stromas v. State*, 618 So. 2d 116 (Miss. 1993), this Court addressed those cases where the sentence is within the prescribed statutory limits:

> Though no sentence is "per se" constitutional, this Court, in the context of our habitual statutes, as well as in sentencing other offenders, has recognized the broad authority of the legislature and trial court in this area and had repeatedly held that where a sentence is within the prescribed statutory limits, it will generally be upheld and not regarded as cruel and unusual.

*Id.* at 123-24.

¶49. However, where a sentence is "grossly disproportionate" to the crime committed, the sentence is subject to attack on the grounds that it violates the Eighth Amendment prohibition of cruel and unusual punishment. *Hoops*, 681 So. 2d at 537 (citing *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)); *Wallace v. State*, 607 So. 2d 1184, 1188 (Miss. 1992). This Court has held that apart from a sentence of life in prison without the

20

possibility of parole or a sentence which is manifestly disproportionate to the crime committed, an extended proportionality analysis is not required by the Eighth Amendment when there is an allegation of cruel and unusual punishment. *Barnwell v. State*, 567 So. 2d 215, 221 (Miss. 1990).

¶50.     As recently noted by Mississippi Court of Appeals, *Pittman v. State* 2004 WL 2439694, *6 (Miss. Ct. App. 2004), discussing an Eighth Amendment claim some examples of sentences upheld by Mississippi courts include: *Braxton v. State*, 797 So. 2d 826 (Miss. 2000) (holding that thirty years was the maximum sentence within the statutory guidelines for unlawful sale of cocaine and, thus, was not excessive or cruel and unusual punishment); *Edwards v. State*, 615 So. 2d 590 (Miss. 1993) (holding that sentence of twenty-five years for possession of cocaine with intent to distribute was not grossly disproportionate where statutory maximum sentence was thirty years and fine of up to $1,000,000); *Hart v. State*, 639 So. 2d 1313 (Miss. 1994) (holding that sentence of twenty years and fine of $250,000 was not disproportionate to conviction of possession of marijuana with intent to deliver or distribute where sentence was within statutory limits); *Rogers v. State*, 599 So. 2d 930 (Miss.1992) (holding that sentence of twenty-five years in prison and fine of $500,000 was not excessive for conviction for distribution of crystal methamphetamine); *Bracy v. State*, 396 So. 2d 632 (Miss.1981) (holding that trial court did not abuse its discretion by imposing sentence of twenty years and fine of $10,000 on defendant convicted of sale of phencyclidine (PCP)).

¶51.    Tate's sentence is within the statutory guidelines prescribed by the Legislature for the crime for which he was convicted.  Under Miss. Code Ann. § 41-29-147 and Miss. Code Ann. § 99-19-81, the trial court sentenced Tate correctly.

¶52.    In considering whether Tate's sentence is grossly disproportionate to Tate's crime, we have reviewed this Court's opinion in *Williams v. State*, 794 So. 2d 181 (Miss. 2001).  There the defendant was convicted for the sale of cocaine under § 41-29-132 and sentenced to thirty years. This sentence was enhanced to sixty years by § 41-29-142, because the sale occurred near a school. Because Williams was a second and subsequent offender the sixty year sentence was again doubled to one hundred and twenty years pursuant to § 41-29-147. Next, the judge applying § 99-19-81, sentenced Williams to the 120 years without a possibility of parole or early release.   Williams also alleged that the sentence of 120 years for the sale of $20 of cocaine was tantamount to a life sentence in prison, and that the sentence was disproportionate to the crime and, therefore, cruel and unusual punishment under the *Solem* analysis. *Id.* at 189. This Court held: "[e]ven though this sentence is extremely lengthy, it does not exceed the maximum sentence allowed by statute. Therefore, we find that the trial court did not abuse its discretion in sentencing Williams to the maximum without possibility of parole or early release." *Id.* at 190.

¶53.    Though certainly harsh, Tate's sentence is not "grossly disproportionate" to his crime. It is within the Legislature's prerogative to determine that three crimes such as those committed by Tate can result in a sentence of sixty years without parole or chance of early release.   The Legislature has made its decision, and we may not impose our own opinion on the issue, absent a constitutional violation which we do not find.

## CONCLUSION

¶54.    Finding no reversible error, we affirm the judgment of the Circuit Court of Lauderdale

County.

¶55.    **COUNT I: CONVICTION OF DELIVERY OF MARIJUANA (435.3 GRAMS) AND SENTENCE OF SIXTY (60) YEARS AS AN HABITUAL OFFENDER UNDER 99-19-81 AND AN ENHANCED OFFENDER UNDER 41-29-147, WITHOUT THE POSSIBILITY OF SUCH SENTENCE TO BE REDUCED OR SUSPENDED NOR BE ELIGIBLE FOR EARLY RELEASE, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, TOGETHER WITH PAYMENT OF FINE OF $10,000.00, ALL FEES AND COSTS, AFFIRMED.**

**COUNT II: CONVICTION OF DELIVERY OF MARIJUANA (531.0 GRAMS) WITH THE INTENT TO DISTRIBUTE AND SENTENCE OF SIXTY (60) YEARS AS AN HABITUAL OFFENDER UNDER 99-19-81 AND AN ENHANCED OFFENDER UNDER 41-29-147, WITHOUT THE POSSIBILITY OF SUCH SENTENCE TO BE REDUCED OR SUSPENDED NOR BE ELIGIBLE FOR EARLY RELEASE, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS TOGETHER WITH PAYMENT OF FINE OF $10,000.00 AND ALL FEES, AFFIRMED.  SENTENCE IN COUNT II SHALL RUN CONCURRENTLY WITH THE SENTENCE IN COUNT I. APPELLANT IS GIVEN CREDIT FOR 142 DAYS SERVED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY.  DIAZ, J., NOT PARTICIPATING.**